FILED'08 JAN 08 15:58USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GINETTA BEAN-TORREY                         CV 06-1671-MA

            Plaintiff,                      OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

            Defendant.

TIM WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Road, PMB # 314
Oregon City, OR 97045
(503)632-1120

            Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

THOMAS M. ELSBERRY
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2112

      Attorneys for Defendant

MARSH, Judge.

Plaintiff Ginetta Bean-Torrey seeks judicial review of the final decision of the Commissioner denying her May 13, 2003, application for disability insurance and supplemental security income benefits (benefits) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1281-83f.

On the date of the Commissioner's final decision, plaintiff was 54 years old.  She has a high school diploma and attended beauty school.  She has been employed as a hairdresser, inventory manager, and glove cutter.

Plaintiff filed a claim that she has been disabled since May 24, 2002, because of Kienbock's disease, a right-shoulder rotator cuff injury, and high blood pressure.  Her claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on October 19, 2005, and thereafter issued a decision that plaintiff was not disabled.  On September 15, 2006, the Appeals Council denied plaintiff's request for review.  That decision became the final decision of the Commissioner for purposes of review.

2 - OPINION AND ORDER

Plaintiff seeks an order from this court either reversing the Commissioner's decision and remanding the case for an award of benefits or remanding the case for further proceedings with instructions.

For the following reasons, the court **REVERSES** final decision of the Commissioner and **REMANDS** this case for an immediate award of benefits.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff has the following severe impairments under 20 C.F.R. §§404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities):  fused left wrist and limited right wrist due to Kienbock's Disease, and right shoulder rotator cuff tear.

At Step Three, the ALJ found these impairments do not meet
or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity
to perform a significant range of sedentary to light work
including lifting up to 10 lbs., no constant or frequent overhead
reaching with her right arm, and no repetitive or constant gross
manipulation with her right dominant hand.  The ALJ also found
plaintiff has no range of motion in her left wrist but has the
ability to use the fingers of her left hand. She should not
repetitively use the right wrist.  She is able to push and pull
occasionally.

At Step Four, the ALJ found plaintiff is unable to perform
her past relevant work.

At Step Five, the ALJ found plaintiff is able to perform
other work that exists in significant numbers in the regional and
national economy, including the jobs of information clerk and
receptionist.

Consistent with the above findings, the ALJ found plaintiff
was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ:  failed to give clear and
convincing reasons for rejecting the disability opinion of
treating physician, Michael Mara, M.D.; failed to give germane
reasons for rejecting the lay witness testimony of plaintiff's

daughter regarding plaintiff's daily activities; improperly found plaintiff was able to work on a sustained basis; improperly relied on erroneous vocational testimony; and misapplied the medical-vocational guidelines.

## **LEGAL STANDARDS**

### **Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v.

5 - OPINION AND ORDER

Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

### Plaintiff's Testimony.

Plaintiff suffers from Kienbock's Disease, which involves a lack of blood supply to the small bones in the hand, resulting in deterioration that is similar to arthritis.

Plaintiff has the disease in both hands.  She is right-handed.  Her left wrist is fused as a result of surgery, and,

therefore, is immobile.  The fingers on her right hand swell.
Plaintiff wears a wrist brace on her right wrist to limit motion.
She has been advised by her physician, Dr. Mara, that the
progression of Kienbock's Disease in her right hand will be more
rapid the more she uses that wrist.  The same surgery that was
performed on her left wrist is "inevitable" when plaintiff is
able to afford it.

        Plaintiff's hands hurt all the time but the surgery on
the left wrist alleviated the pain to some degree in her left
hand.  To alleviate some pain, plaintiff holds her right hand
elevated with her elbow resting on the table.  She also takes
three vicodin per day for pain.  Plaintiff has difficulty
dressing, insofar as it requires manipulating zippers and
buttons.  She limits her driving because her vehicle has a manual
transmission, which is difficult to operate.  Plaintiff has
minimal strength in both hands.

    Plaintiff's last job was as an inventory manager, which
involved receiving and moving parts such as screws, springs, and
plastics.  She would be required frequently to lift boxes
weighing up to 50 lbs.  She would also be required to input
inventory information into a computer on a daily basis.  She is
unable to do that job now because of lifting restrictions imposed
by Dr. Mara and because of her inability to use the computer.

Plaintiff acknowledged any pain from her right shoulder as a result of the rotator cuff tear is minimal when compared to the pain in her hands.

Plaintiff lives in a manufactured home near a 15 acre parcel of land owned by her mother.  She owns a horse that she has been unable to ride since the surgery on her wrist.  A next-door neighbor-friend takes care of the horse.  Plaintiff's two daughters visit her almost on a daily basis and help plaintiff with vacuuming and whatever else needs to be done around the home.

**Lay Witness Testimony**.

Plaintiff's daughter, Jessica Dorr, lives five miles away from her mother and visits her almost every day.  She helps her mother vacuum, do dishes, and feed the horse because her mother is unable to do those chores.  Her mother did not ask her to do these chores, but the chores needed to be done.  Her mother complains of pain all the time.

**Plaintiff's Medical Records**.

Treating Physician Michael Mara, M.D. - Othopedic Surgeon.

Dr. Mara treated plaintiff's Kienbock's Disease symptoms from January 2003 until at least May 2004.  In a February 2004 chart note, Dr. Mara noted plaintiff continued to have pain in her wrists.  In her left wrist, plaintiff "had no effusion of

the joint and full range of motion and full finger motion."  He
also noted she has "established Kienbock disease in both wrists."
He recommended "some hand therapy for range of motion of the left
finger and she has continued stiffness in this hand."  Finally,
he stated:

> Work-wise, I think it is going to be very
> difficult for her to find any work which
> is suitable for her with her left wrist
> fused and her right wrist at risk due to
> established Kienbock disease here.  She may
> need to look at disability or at finding
> extremely light levels of work for the rest
> of her life.

A.R. 219.

In a May 20, 2005, letter, Dr. Mara wrote that plaintiff
suffers from a "permanent life long painful and debilitating
condition" and that, although "[m]edical and surgical treatment
can help to alleviate symptoms, [it will] not restore normal hand
or wrist functions and typically [will] not alleviate all of the
pain."  Dr. Mara opined that "this condition will significantly
limit her employment opportunities throughout her lifetime."
A.R. 227.

In October 2005, in connection with plaintiff's disability
claim, Dr. Mara responded to a preprinted check-off form prepared
by plaintiff's attorney and opined that plaintiff "has not been
capable of performing sustained SEDENTARY . . . or LIGHT work on
a regular and continuing basis, i.e., 8 hours a day, 5 days a
week, or an equivalent work schedule."  A.R. 248-49.

9 - OPINION AND ORDER

<u>Consulting Physician Sharon Eder, M.D. - Internist</u>.
<u>Consulting Physician Howard Johnson, M.D. - Surgeon</u>.

Dr. Eder and Dr. Johnson reviewed plaintiff's medical records separately in July and October 2003, respectively, and checked the same boxes relating to plaintiff's residual functional capacity regarding her hands and wrists.  They each concluded plaintiff could lift or carry 20 lbs occasionally and 10 lbs frequently, and push and pull on a limited basis. Plaintiff would be able to stand and/or walk and sit for six hours in an eight-hour day, with normal breaks.  Plaintiff's only postural limitations are that she is able to balance or crawl only occasionally.  Plaintiff is also precluded from overhead reaching with her right upper extremity and is limited to occasional gross manipulation of the left arm.  Dr. Eder concluded plaintiff is limited to frequent but not constant gross manipulation of the left upper extremity.  Finally, Dr. Johnson opined plaintiff could return to her past relevant work as a glove cutter.

**Vocational Expert (VE) Testimony**.

VE Kent Granat opined plaintiff would not be able to perform any of her past relevant work, including the glove cutter job, based on the ALJ's hypothetical that she would be limited to mixed sedentary and light work, lifting no more than 10 lbs., without constant or frequent overhead reaching with the right

10- OPINION AND ORDER

arm, only occasional non-repetitive and non-constant gross manipulations of the right hand, occasional pushing and pulling, and no repetitive use of the right wrist.

The VE opined plaintiff could perform the job of storage facility clerk, and the jobs of information clerk and receptionist, based on plaintiff's experience as a cashier and hairdresser, which require customer service skill.

**ANALYSIS**

**Rejection of Treating Physician's Disability Opinion.**

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).

> Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

<u>Id.</u> (Internal Citations Omitted). In turn, "the opinions of examining physicians are afforded more weight than those of non-

examining physicians." <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

Here, as noted, in May 2005, Dr. Mara opined plaintiff's wrist and hand impairments "will significantly limit her employment opportunities throughout her lifetime."  In October 2005, he opined the impairments would prevent plaintiff from performing sustained SEDENTARY . . . or LIGHT work on a regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule."

The ALJ reasoned that Dr. Mara's May 2005 opinion did not support a disability finding because the opinion does not specifically state plaintiff "is unable to perform any work activity."  Moreover, Dr. Mara's opinion did not refer "to objective findings and relate those medical findings to any restrictions in the performance of work activity."

I disagree.  Dr. Mara made similar findings in May 2003, and it is clear his opinion remained the same two years later. Indeed, in a chart note from February 2004, Dr. Mara stated that "[w]ork-wise, . . . it is going to be very difficult for [plaintiff] to find any work which is suitable for her with her left wrist fused and her right wrist at risk due to established Kienbock disease here."  Each of these opinions was based on objective findings following multiple examinations specifically relating to plaintiff's Kienbocks Disease.  Moreover, although

Dr. Mara's opinion does not eliminate the possibility that plaintiff may be able to perform some "work activity," it does preclude "sustained" work activity.

The ALJ also reasoned Dr. Mara's October 2005 disability opinion on a preprinted form sent to him by plaintiff's attorney was not entitled to "much weight" because Dr. Mara's conclusory opinion "does not tell the reader why the [plaintiff] is unable to perform sedentary [and light] work."

Again, I disagree.  Dr. Mara's opinion reflects the objective findings he made for purposes of treatment during the course of physical examinations that spanned three years.  His opinion, although offered on a preprinted form, is supported by his chart notes.  In contrast, the ALJ accepted the opinions of the consulting physicians, Dr. Eder and Dr. Johnson, who opined on similar preprinted forms, but without the benefit of any examination of plaintiff, that she had the residual functional capacity to perform sedentary to light level work. It is particularly noteworthy that the ALJ did not question Dr. Johnson's opinion that plaintiff could return to her past job as a glove cutter, even though the VE specifically ruled that job out.

On this record, I conclude the ALJ failed to give clear and convincing reasons, supported by substantial evidence in the record, to reject Dr. Mara's opinions as to plaintiff's ability

to work.  When each of Dr. Mara's opinions is credited as true, see Smolen v. Chater, 80 F.3d 1273, 1992 (9th Cir. 1996), I am satisfied Plaintiff has met her burden of proving her inability to engage in any substantial gainful activity on a sustained basis by reason of impairments to her wrists and hands resulting from Kienbocks Disease.  Under these circumstances, I conclude a remand for immediate payment of benefits is appropriate.[1]

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this matter is **REMANDED** to the Commissioner for an award of benefits to plaintiff.

IT IS SO ORDERED.

DATED this 8 day of January, 2008.

*Malcolm F. Marsh*
MALCOLM F. MARSH
United States District Judge

---

[1] Therefore, I need not address plaintiff's other bases for challenging the Commissioner's decision.